IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE GATLIN, | ) |
| Plaintiff, | ) No. 07 C 7212 |
| v. | ) Judge Lefkow |
| P.O. A. CRISCIONE, Star #16195, P.O. S. MULKERRIN, Star #17071, ANTHONY CAPUTO, individually, and THE CITY OF CHICAGO, S&H TOWING, and BILL KAY CHRYSLER | ) |
| Defendants. | ) JURY DEMANDED |

## PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S MOTION TO STAY AND COMPEL ARBITRATION

Plaintiff, GEORGE GATLIN, by and through his attorneys, ED FOX & ASSOCIATES, moves this Court to deny Defendant's Motion to Stay and Compel Arbitration. In support of his motion, Plaintiff states as follows:

I.  **INTRODUCTION**

On or about May 2, 2007, the parties, Plaintiff and Defendant Bill Kay Chrysler, entered into a contract whereby Plaintiff purchased a used vehicle from Defendant in exchange for a promise of a down payment of $8,500.00. (Exhibit A). At the time of purchase, the parties also entered into an Arbitration Agreement. (Exhibit B). On May 23, 2007, Plaintiff delivered the final portion of his down payment to Defendant, which Defendant accepted. (Exhibit C). On June 4, 2007, Defendant Bill Kay, through its agent Defendant Anthony Caputo and working in concert with Defendant Police Officers, caused Plaintiff to be falsely arrested and filed a false criminal complaint against Plaintiff.

1

(Declaration of Ed Fox and Exhibit D).[1] As a result, Plaintiff filed the present civil rights suit against the above name defendants. Defendant Bill Kay Chrysler then made a motion to stay and compel arbitration. Plaintiff will show that the present suit is not a dispute covered by the arbitration agreement and in any case, Defendants waived its right to arbitration by filing a false criminal complaint against Plaintiff. For these reasons, Defendants motion should be denied.

## II. STANDARD AND PROCEDURE UNDER WHICH TO TEST PETITIONER'S MOTION

Under the rules of the Federal Arbitration Act where there is an issue as to the arbitrability of a dispute, the Court is to have an appropriate trial to hear the issues. The relevant section reads, in part, as follows:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C.A. § 4

Further, petitions to compel arbitration are to be treated as motions for summary judgment. *Doctor's Associates, Inc. v. Distajo* 944 F.Supp. 1010, 1014 (D.Conn.,1996); *see also, Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir.1980);

---

[1] The criminal complaint against Plaintiff is signed on behalf of Defendant Bill Kay Chrysler's by its agent/employee, Defendant Anthony Caputo, naming Defendant Bill Kay Chrysler as the complainant. (Exhibit D).

2

*Matterhorn, Inc. v. NCR Corp.,* 727 F.2d 629, 632 (7th Cir.1984).

Since, it is to be treated as a motion for summary judgment, the non-moving party is entitled to the benefit of reasonable inferences. Further, the petitioner's motion must be denied if there are disputed issues remaining.

In the instant case, as shown below, there are issues of waiver and scope of the alleged arbitration agreement that are in dispute. As a result, these issues are to be tried under the rules of the Federal Arbitration Act.

### III. DEFENDANT WAIVED ITS RIGHT TO ARBITRATION

"A party may waive its rights to arbitration when it conducts itself in a manner that is inconsistent with the arbitration clause, thereby indicating an abandonment of its contractual rights." *State Farm Mutual Automobile Insurance Company v. George Hyman Construction Company*, 306 Ill.App.3d 874, 883, 715 N.E.2d 749, (citing *Ure v. Wangler Construction Co.,* 232 Ill.App.3d 492, 498-99, 173 Ill.Dec. 785, 597 N.E.2d 759, 764 (1992)). The arbitration agreement between the parties states, "[b]y signing this Arbitration Agreement, you and we agree to submit our disputes to arbitration. By agreeing to submit our disputes to arbitration, you and we give up some rights, including the right to go to court..." In direct violation of this agreement, Defendant proceeded to file a false criminal complaint in a circuit court of Cook County against Plaintiff claiming he "did knowingly and intentionally submitted false documentation of employment status and financial status."[2]

"A party's conduct amounts to a waiver when the party admits an arbitration agreement exists, yet submits issues that are arbitrable under the contract to a court for decision." *State Farm,* at 885 (citing *Kennedy v. Commercial Carriers, Inc.* 258 Ill.App.3d

---

[2] On July 11, 2007, the criminal case Defendants initiated against Plaintiff was terminated by the court in Plaintiff's favor.

939, 943, 196 Ill.Dec. 894, 630 N.E.2d 1059, 1062 (1994). Since it was Defendant who authored the Arbitration Agreement and they are making a motion to compel arbitration, there is no doubt that Defendant admits an arbitration agreement exists. As a result, issues concerning Plaintiff's financial and employment status would be issues that concern the purchase of the vehicle and therefore directly fall under the arbitration agreement. However, Defendant chose to bring those issues to court and caused a criminal complaint to be filed against Plaintiff. This conduct was inconsistent with the arbitration clause and amounts to a waiver of Defendant's arbitration rights.

The Court of Appeals, Seventh Circuit, has held that such conduct is a waiver, stating, "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.* 50 F.3d 388, 390 (7th Cir. 1995), (citing *St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co.*, 969 F.2d 585 (7th Cir. 1992). The Court gave further guidelines for the review of whether a party has waived its rights to arbitration.

> "[i]n determining whether a waiver has occurred, the court is not to place its thumb on the scales; the federal policy favoring arbitration is, at least so far as concerns the interpretation of an arbitration clause, merely a policy of treating such clauses no less hospitably than other contractual provisions." *Id.*, at 390.

In addition, the Court stated "[t]o establish a waiver of the contractual right to arbitrate, a party need not show that it would be prejudiced if the stay were granted and arbitration ensued." *Id.*, at 390. However the Court also stated,

> "prejudice to…the party resisting arbitration, should weigh heavily in the decision whether to send the case to arbitration, as should the diligence or lack thereof of the party seeking arbitration-did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?" *Id.*, at 391.

In the present case, Defendant chose very early to proceed judicially with a criminal

4

complaint against Plaintiff. If Defendant had issue with Plaintiff concerning the return of the vehicle, Defendant should have given Plaintiff notice of arbitration and proceeded in an arbitral forum. However, Defendants made their choice of proceeding in a judicial forum, and Plaintiff has followed suit by proceeding with his civil suit in the judicial forum as well. Defendants cannot now balk at the forum choice they have made after Plaintiff has expended the time and resources to bring suit in federal court. As the Court said, "the failure...to move promptly for arbitration is powerful evidence that they made their election against arbitration...they should be bound by their selection." *Id.*, at 391. Defendant's Motion to Compel Arbitration should therefore be denied.

## IV. PLAINTIFF'S CIVIL RIGHTS SUIT IS NOT A DISPUTE COVERED BY THE ARBITRATION AGREEMENT

Arbitration is a matter of contract, and the parties to an agreement are obligated to arbitrate only those issues which by clear language they have agreed to arbitrate. *Ryan v. Kontrick*, 304 Ill.App.3d 852, 710 N.E.2d 11 (1999), *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct 1415, 1418, 89 L.Ed.2d 648, 655 (1986). The arbitration agreement in question is controlled by the Federal Arbitration Act (FAA). (Exhibit B). Arbitration agreements are contracts and as such,

> "the failure to apply general contract doctrines to arbitration agreements...would raise arbitration to an elevated status not contemplated by the FAA or Congress. 'As the 'saving clause' in § 2 indicates, the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so.'" *Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 847 N.E.2d 99 (2006). (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n. 12, (1967)).

According to the arbitration agreement between the parties, "[a] 'dispute' includes any controversy or claim arising from or relating to the vehicle..." (Exhibit B). The arbitration agreement was signed subsequent to the entering of a contract for the *sale* of a

5

vehicle. Plaintiff's civil rights suit arises out of actions by Defendants resulting in the deprivation of Plaintiff's constitutional rights. It is unreasonable and absurd to assert that at the time Plaintiff signed the contract to purchase his vehicle and the subsequent arbitration agreement in connection with the sales contract, that Plaintiff was contemplating or could foresee that Defendants would accuse him of having a gun, have him falsely arrested for something he did not do, and that he would be forced to defend himself against a false criminal complaint. Indeed, Judge Posner of the Court of Appeals, Seventh Circuit, warned about the "absurd results" that could ensue from interpreting an arbitration agreement outside of its accompanying contract. *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003) (warning that it would be absurd that a wrongful death claim could be submitted to arbitration because of an arbitration agreement signed in connection with a loan agreement). The same issue arises in this case where Plaintiff went to buy a car and ended up being falsely arrested and having to defend himself against false criminal charges.

As stated, the Plaintiff signed an arbitration agreement in connection with buying a used vehicle. Plaintiff would not have contemplated issues arising out of the vehicle to include civil rights claims. However, an issue that Plaintiff would have contemplated to be arbitrable would be issues relating to the purchase contract for the vehicle. For example, Defendants breached the purchase contract it made with Plaintiff when it failed to give Plaintiff notice that Defendant could not obtain third party financing of the purchase within the 15 business day time period Defendant had to cancel the contract, and then repossessed the car. According to the purchase contract, the Defendants had 15 business days from the date of the contract in which to determine whether it could obtain third party financing of the purchase of the vehicle or the Dealer could cancel the contract. Defendants would then give

6

Plaintiff notice and Plaintiff would have to return the vehicle. (Exhibit A). However, Defendant did not give Plaintiff notice within 15 business days that the car needed to be returned. This is evidenced by the fact that Defendant accepted $800.00, the final portion of Plaintiff's down payment, on May 23, 2007. (Exhibit D) [3]

In fact, Defendant did not give Plaintiff notice to return the vehicle at all. On May 23, 2007, when Defendant accepted Plaintiff's down payment, Defendant's employee informed Plaintiff that the car was his and he would be receiving a payment book shortly.[4] Plaintiff only brings up the issue of breach of contract to show how (had Defendants not already waived their arbitration rights) this would be the exact sort of issue that Plaintiff would have been obligated to arbitrate. However, breach of contract is not a claim in Plaintiff's civil rights suit. False arrest and malicious prosecution are too attenuated to have been reasonably considered by Plaintiff at the time he signed the arbitration agreement.

## V. PLAINTIFF'S CLAIMS AGAINST BILL KAY ARE TOO INTERTWINED TO BE SEPERATED FROM PLAINTIFF'S OTHER CLAIMS

Even if Plaintiff's civil right suit was covered under the arbitration agreement and Defendant had not already waived its arbitration rights, Plaintiff's claims are too intertwined to be separated. Plaintiff's claims against Bill Kay are also against all of the other Defendants named in the suit and base Bill Kay's liability on the doctrine of *respondeat superior*. It would be prejudicial to Plaintiff to have to prosecute his claims without the availability of discovery from an essential party to the suit.

---

[3]  May 23, 2007, was the last day of the 15 business day time period in which Defendant had to cancel the contract for inability to obtain third party financing. It does not make sense that Defendant would accept money from Plaintiff on the last day Defendant had to cancel the contract and had already given Plaintiff notice the contract was cancelled.

[4]  At the time Defendant repossessed the vehicle on June 4, 2007, Plaintiff, having received no notice from Defendant to the contrary, believed he had purchased the vehicle and was waiting to get a payment book from Defendant in order to start making the rest of his payments on the vehicle. Had Defendants informed Plaintiff that he must return the car, Plaintiff would have done so.

Removal of the entire civil rights suit to arbitration would also be prejudicial to Plaintiff. The United States Supreme Court has recognized that "unlike federal interests, arbitration is well suited to resolving contractual disputes." *Stulberg v. Intermedics Orthopedics, Inc.*, 997 F.Supp. 1060, 1067 (1998), (citing *McDonald v. City of West Branch*, 466 U.S. 284, 290 (1984)). "The Court reasoned that arbitration 'cannot provide an adequate substitute for judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard.' " *Id.*, at 1067, (citing *McDonald*, at 290.)

## VI.  CONCLUSION

Defendants waived any rights to arbitration they may have had by bring a suit in criminal court against Plaintiff. Plaintiff has initiated the present civil rights suit to vindicate the violation of his rights by Defendant. Defendant cannot demand Plaintiff honor an agreement that they have refused to honor themselves.

WHEREFORE, for the foregoing reasons, Plaintiff, George Gatlin, moves this Court to deny Defendants Motion to Compel Arbitration.

BY: /s/ Leslie C. McCoy
Leslie C. McCoy

ED FOX & ASSOCIATES
Attorneys for Plaintiff
300 West Adams Street
Suite 330
Chicago, IL 60606
(312) 345-8877

## DECLARATION OF EDWARD M. FOX

I Edward M. Fox declare as follows:

1. I know the facts set forth of my own personal knowledge.

2. The purchase contract, attached hereto as Exhibit A, signed by George Gatlin and Bill Kay Chrysler, is a true and accurate copy of the original.

3. The criminal complaint, attached hereto as Exhibit D, is signed by Anthony Caputo. It is a true and accurate copy of the original. He is the driver/repossessor of Plaintiff's vehicle. He was working on behalf of, and therefore was the agent of Bill Kay Chrysler at the time of the incident at issue.

4. The arbitration agreement, attached hereto as Exhibit C, signed by George Gatlin and Bill Kay Chrysler, is a true and accurate copy of the original.

5. The cash receipt, attached hereto as Exhibit D, is a true and accurate copy of the original.

I declare under penalty of perjury, this 15th day of February 15, 2008, that the foregoing is true and correct. Executed at Chicago, Illinois.

Edward M. Fox

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE GATLIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 7212 |
| | ) | |
| v. | ) | Judge Lefkow |
| | ) | |
| P.O. A. CRISCIONE, Star #16195, | ) | |
| P.O. S. MULKERRIN, Star #17071, | ) | |
| ANTHONY CAPUTO, individually, and THE | ) | |
| CITY OF CHICAGO, S&H TOWING, and | ) | |
| BILL KAY CHRYSLER | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | JURY DEMANDED |

## PROOF OF SERVICE

I, Leslie C. McCoy, an attorney, under penalty of perjury, and state that on February 15, 2008, I filed **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR TO STAY AND COMPEL ARBITRATION,** service is being made in accordance with the General Order on Electronic Case Filing section XI.

/s/Leslie C. McCoy
Leslie C. McCoy
ED FOX & ASSOCIATES.
300 West Adams, Suite 330
Chicago, IL 60606
(312) 345-8877

# EXHIBIT A

# Bill Kay

**BILL KAY CHRYSLER**
2100 OGDEN AVENUE
DOWNERS GROVE, IL
1-630-968-8800

**USED**

74637
74637

## PURCHASE CONTRACT/BILL OF SALE

PURCHASE CONTRACT/BILL OF SALE FOR USED VEHICLE
DATE: 05/02/2007
SALESPERSON:

| YEAR | MAKE/MODEL | BODY TYPE |
|---|---|---|
| 2006 | CHRY 300 | |

| VIN NUMBER | COLOR TRIM |
|---|---|
| 2C3KA53G86H458101 | GREY |

| STOCK NUMBER | MILEAGE |
|---|---|
| P7252 | 18830 |

The used vehicle sold under the Purchase Contract of the same date is sold "AS IS" with no express OR implied warranties or representations. The salesperson of the Dealer did not:
1. Refer to the condition of the vehicle by using phrases such as (or similar to) "cream of the crop", "cream puff", "a cherry", "like new", "in perfect condition", or "is safe".
2. Represent that the vehicle is "accident free" or "has never been in an accident" or "is something that will provide worry-free performance" or the like.
3. Represent that the vehicle has been "safety checked", "inspected", "examined" or "treated" other than the matters set forth on the attached list.
4. Refer to the prior owner in any way.

| CASH PRICE OF VEHICLE | $ 22995.00 |
|---|---|
| | N/A |
| CHRYSLER GAP&DLR | 495.00 |
| OPTIONAL ERT FEE (EVR) | 25.00 |
| DOCUMENTARY SERVICE FEE | 58.48 |
| SPECIAL BENEFITS PROGRAM | N/A |
| TOTAL | $ 23573.48 |
| ILLINOIS SALES TAX  8.0000 | 1846.28 |
| OTHER TAXES (if any) | 173.09 |
| FEDERAL LUXURY EXCISE TAX (10%) | N/A |
| CASH PRICE OF VEHICLE | 25592.85 |
| LICENSE, TRANSFER TITLE DRIVE AWAY FEE | 143.00 |
| SERVICE CONTRACT SOLD BY BILL KAY CHRYSLER | 1500.00 |
| TOTAL PURCHASE PRICE | 27235.85 |
| CASH DOWN PAYMENT | 8500.00 |
| TRADE IN ALLOWANCE | N/A |
| DUE BASED UPON NOTE IN ___ DAYS | N/A |
| REBATES APPLIED | N/A |
| | N/A |
| TOTAL DOWN PAYMENT | 8500.00 |
| UNPAID CASH BALANCE DUE | $ 18735.85 |

NOTICE: TO THE NEGOTIATED CASH SALE PRICE OF EACH VEHICLE, NO MORE THAN $53.52 MAY BE ADDED FOR DEALER COSTS AND OVERHEAD. THE ONLY OTHER ADDITIONAL CHARGES PERMITTED ARE DEALER ADDED OPTIONS, WARRANTY AND SERVICE CONTRACTS, INSURANCE AND THE ACTUAL COST OF LICENSE AND TITLE REGISTRATION AND TAXES.

### FINANCING TERMS

**DEALER ARRANGED FINANCING.** In the event of a time sale, DEALER SHALL NOT BE OBLIGATED TO SELL UNTIL AND UNLESS a finance source approves this order and agrees to purchase a retail installment contract between customer and Dealer based on this order. As part of obtaining financing, Customer agrees to provide Dealer with a true, correct and complete credit application and to cooperate fully in obtaining financing including providing of any supporting documentation. This agreement may be cancelled by Dealer if Dealer determines that it cannot obtain third party approval and may be cancelled by either party if no financing is obtained for Customer on the agreed terms within 15 business days of the date of this agreement. If the Contract is terminated as a result of the inability to obtain third party financing, Customer agrees to return the vehicle within 24 hours of notice from Dealer and Dealer agrees to return the Customer's trade and down payment, if applicable. Dealer may repossess the vehicle if Customer refuses to return it.

**IMMEDIATE DELIVERY - SHORT TERM FINANCING.** I accept immediate delivery and possession of the subject vehicle. In exchange for such possession, I promise to pay Dealer the remainder of the purchase price in accordance with the SHORT TERM FINANCING agreement attached hereto and made a part of hereof. If I do not pay pursuant to the terms of the SHORT TERM FINANCING agreement, I understand that I will have breached this contract and will be liable to Dealer for damages as set out on the reverse of this contract and in the SHORT TERM FINANCING agreement.

**NO DEALER FINANCING.** I am tendering full payment for this subject vehicle at the time of this transaction or will make full payment within _____ days. Once this agreement is signed by me and accepted by Dealer regardless of when I take actual possession of the vehicle, it is fully binding. I understand that if I do not fulfill my obligations under the contract or if my check does not clear, I will be liable to Dealer for damages as set out on the reverse side.

**NO INCIDENTAL OR CONSEQUENTIAL DAMAGES.** The Customer shall in no event be entitled to recover from Dealer any incidental or consequential damages in connection with this Contract including without limitation, damages resulting from injury to property, loss of use, loss of time, loss of profits or loss of income, and including, without limitation any such damages arising from liability based on breach of warranty, contract, tort, strict liability or any other statutory or common law theory of liability.

| CUSTOMER NAME | GEORGE GATLIN | DATE OF BIRTH 04/22/58 |
|---|---|---|
| STREET ADDRESS | 733 N WALLER ST | |
| CITY, STATE, ZIP | CHICAGO, IL 60644 | |
| BUSINESS ADDRESS | | |
| CITY, STATE, ZIP | | |
| RESIDENCE PHONE | (773)379-0218 | BUSINESS PHONE (773)823-6703 |
| DRIVER'S LICENSE NUMBER | G345-3005-8115 | |
| SOCIAL SECURITY NUMBER | | |

### TRADE-IN VEHICLE

| YEAR | MAKE/MODEL | COLOR |
|---|---|---|
| VIN # | | |
| VIN # | | AGE |
| BALANCE OWED TO # | | AGE |
| ADDRESS | | |
| USED CAR ALLOWANCE (USED CAR ALLOWANCE DOES NOT ALWAYS REFLECT ACTUAL CASH VALUE) | $ | |
| ESTIMATED BALANCE OWED ON CAR (SUBJECT TO VERIFICATION) | $ | |
| NET ALLOWANCE ON USED CAR (TRANSFER TO LEFT COLUMN) | $ | |

EXHIBIT A

I UNDERSTAND AND AGREE TO TRADE-IN THE VEHICLE DESCRIBED ABOVE TO DEALER UNDER THE TERMS SET FORTH ABOVE AND OF THE REVERSE SIDE. IF THE BALANCE DUE ON THE TRADE-IN VEHICLE THE CUSTOMER IS SELLING IS AN AMOUNT GREATER THAN SHOWN ABOVE, THE CUSTOMER AGREES TO PAY THE ADDITIONAL AMOUNT IN CASH UPON REQUEST. I certify that the above information about my trade-in is correct.

SIGNATURE OF CUSTOMER _____

NOTICE: DEALER SPECIFICALLY MAKES NO REPRESENTATION AS TO ANY AIR BAG ON THIS VEHICLE. PLEASE REFER TO THE MANUFACTURER'S WARRANTIES AND SPECIFICATIONS.

THE VEHICLE REFERENCED IN THIS CONTRACT IS SOLD AS EQUIPPED AT TIME OF DELIVERY.

THIS CONTRACT DOES NOT PROVIDE ANY RIGHT TO RESCISSION OR A TRIAL PERIOD.

### WARRANTY DISCLAIMERS AND OTHER INFORMATION

**VEHICLE SOLD "AS IS".** The dealer makes no express or implied warranties with respect to the used vehicle sold hereunder. The Customer has not made the Dealer aware of any special or particular purpose for which he or she intends to use the vehicle and is not relying on the Dealer's skill or judgement to furnish a vehicle suitable for any such purpose. SPECIFICALLY, THE CUSTOMER IS NOT RELYING UPON ANY REPRESENTATIONS OF THE DEALER'S SALESPERSONS, THE VEHICLE'S CURRENT CONDITION OR HOW THE VEHICLE WILL PERFORM OR IF THE VEHICLE HAS BEEN SAFETY CHECKED OR INSPECTED. THE DEALER, TO THE FULLEST EXTENT PERMITTED BY LAW, EXPRESSLY DISCLAIMS AND EXCLUDES ANY AND ALL WARRANTIES, WHETHER EXPRESSED OR IMPLIED, WITH RESPECT TO THE USED VEHICLE SOLD HEREUNDER, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND STATES THAT THIS IS AN "AS IS" SALE. If the vehicle has been sold with a Warranty of Service Contract, the implied warranties or merchantability of fitness for a particular purpose are not disclaimed accept as provided below.

**LIMITATION IN DURATION OF IMPLIED WARRANTIES.** To the extent that implied warranties cannot be disclaimed because this vehicle has been sold with a warranty or service contract, Dealer hereby limits the period of any implied warranties, including warranties of merchantability and/or fitness for a particular purpose to the duration of the service contract and/or warranty that is provided with the vehicle.

**FTC WINDOW STICKER.** THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THE CONTRACT. INFORMATION ON THE WINDOW FORM (BUYER'S GUIDE) OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT FOR SALE.

**VEHICLE EMISSIONS.** Dealer makes no representation or warranty that any vehicle sold hereunder has passed or will pass the inspection required by the Illinois Vehicle Emission Inspection Law, Ill. Rev. Stat. Ch. 95 1/2, par. 13A-101 et seq. Compliance is the responsibility of the Customer.

In the case of a service contract, coverage of this service contract is not provided by Chrysler Corporation, its parent, subsidiaries or its affiliates.

THIS TRANSACTION IN NON-CANCELABLE AFTER THE SIGNING OF THIS AGREEMENT EXCEPT AS PROVIDED HEREIN. IF YOU FAIL TO COMPLY WITH YOUR OBLIGATION UNDER THIS CONTRACT, YOU WILL BE LIABLE FOR THE REASONABLE ATTORNEY'S FEE INCURRED BY DEALER IN THE ENFORCEMENT OF THE CONTRACT, AS WELL AS OTHER CHARGES (SEE NO. 8 ON REVERSE SIDE).

I ACKNOWLEDGE THAT DEALER AND ITS AGENTS AND REPRESENTATIVES HAVE MADE NO REPRESENTATIONS, AGREEMENTS OR PROMISES, CONCERNING THE CONTRACT, FINANCING OF THE VEHICLE BEING PURCHASED HEREUNDER, THAT DO NOT APPEAR IN WRITING. BY SIGNING BELOW DEALER CERTIFIES THAT ALL IDENTIFYING NUMBERS CONTAINED IN THIS BILL OF SALE AGREE WITH THOSE ON THE CERTIFICATE OF TITLE.

THIS CONTRACT IS SUBJECT TO CORRECTION OF ANY MATHEMATICAL ERROR BY SALES OR OFFICE PERSONNEL. I CERTIFY THAT I AM 18 YEARS OF AGE OR OLDER. I ACKNOWLEDGE THAT I HAVE READ THE TERMS OF THIS CONTRACT AND THAT I HAVE RECEIVED A COPY OF THIS CONTRACT. I HAVE READ THE MATTER IN THE BACK OF THIS CONTRACT AND AGREE TO IT AS PART OF THIS CONTRACT THE SAME AS IF IT WERE PRINTED ABOVE MY SIGNATURE. I ACKNOWLEDGE THAT THE CONTRACT CONTAINED NO BLANK SPACE AT THE TIME OF SIGNING.

YOUR SIGNATURE BELOW CERTIFIES THAT "THE FUNDS USED FOR THIS TRANSACTION WERE ENTIRELY DERIVED FROM LEGAL SOURCES" AS REQUIRED BY FEDERAL LAW.

SIGNATURE OF CUSTOMER (S) _George Gatlin_    APPROVED AND ACCEPTED BY: _____

THIS CONTRACT IS NOT VALID UNLESS SIGNED & ACCEPTED BY BILL KAY CHRYSLER, INC.

**NO PUBLIC LIABILITY INSURANCE WITH THIS TRANSACTION.**

## ADDITIONAL TERMS AND CONDITIONS

1. **DEFINITIONS.** As used in this Order the terms (a) "Dealer" or "Dealership" shall mean Bill Kay Chrysler, Inc., who is the Dealer to whom this Order is addressed (b) "Purchaser" or "Customer" shall mean the party executing this Order on the face hereof and (c) "Manufacturer" shall mean the Corporation that manufactured the vehicle or chassis, it being understood by Purchaser the Dealer is in no respect the agent of Manufacturer.

2. **PRICE CHANGES.** Manufacturer has reserved the right to change the price to Dealer of new motor vehicles without notice. In the event the price to Dealer of new motor vehicles of the series and body type ordered hereunder is changed by Manufacturer prior to delivery of the new motor vehicle ordered hereunder by Purchaser, Dealer reserves the right to change the cash delivered price of such motor vehicle to Purchaser accordingly. If such cash delivered price is increased by Dealer, Purchaser may if dissatisfied therewith cancel this Order, prior to taking delivery or within seven days of notice of the price change, whichever is earlier.

3. **DESIGN CHANGES.** Manufacturer has reserved the right to change the design of any new motor vehicle, chassis, accessories or parts thereof previously purchased by or shipped to Dealer or being manufactured or sold in accordance with Dealer's orders. Correspondingly, in the event of any such change by Manufacturer, Dealer shall have no obligation to Purchaser to make the same or any similar change in any motor vehicle, chassis, accessories or parts thereof covered by this Order either before or subsequent to delivery thereof to Purchaser.

4. **DELIVERY DELAYS.** Dealer shall not be liable for failure to deliver or delay in delivering the motor vehicle covered by this Order where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer.

5. **TAXES.** The price of the car quoted herein does not include any tax or taxes imposed by any governmental authority prior to or at the time of delivery of such car unless expressly so stated. The Customer assumes and agrees to pay, unless prohibited by law, any taxes, except income taxes, imposed on or incidental to the transaction herein, regardless of the person having the primary tax liability.

6. **RIGHT TO INSPECT - FINAL ACCEPTANCE OF VEHICLE.** The Customer acknowledges that he or she will be given an opportunity to thoroughly inspect the vehicle sold hereunder prior to taking delivery and that by taking delivery the Customer agrees to accept such vehicle with any defect or non-conformity. Receipt of delivery of the vehicle sold hereunder constitutes the Customer's acknowledgement that said vehicle conforms to this Contract and constitutes the Customer's unqualified acceptance of the vehicle pursuant to Section 2-606 of the Uniform Commercial Code as enacted in Illinois.

7. **OTHER DOCUMENTS.** The Purchaser, before or after the time of delivery of the motor vehicle covered by this Order will execute such other forms of agreement of documents as may be required by the terms and conditions of payment indicated on the front of this Contract.

8. **DAMAGES FOR BREACH BY CUSTOMER.** In the event the Customer shall, except as permitted hereunder, cancel the Contract or refuse to take delivery of and pay for the vehicle sold herein, Dealer may, among other remedies, retain from Customer's down payment, or collect from Customer liquidated damages in an amount equal to $1000.00 or 20% of the purchase price of the vehicle, whichever is less. Where a used motor vehicle has been traded in as a part of the consideration for the motor vehicle ordered hereunder, Dealer may sell such used motor vehicle and reimburse itself out of the proceeds of such sale any expenses and for the sale as well as the liquidated damages set out above. Dealer may in the alternative, elect to sue the Customer for any actual damages it has incurred as a result of Customer's breach, including but not limited to, its lost profit under the Contract.

9. **RUSTPROOFING.** Purchaser acknowledges that he/she has reviewed the vehicle manufacturer's warranty with respect to corrosion or rust and the written policy statement of the vehicle manufacturer with respect to "After-market" rustproofing and appearance products. Some manufacturer's suggest that rustproofing may not be necessary.

10. **REPOSSESSION.** In addition to any other remedies that may be available, in the event the Purchaser's down payment checks do not clear the bank or in the event financing (if applicable) is not accepted by the financing source, and Purchaser refuses to return the automobile, or in the event of any default by Purchaser of any of Purchaser's obligations hereunder, Purchaser authorizes Seller to repossess the motor vehicle with or without legal process and by peaceable entry upon Purchaser's property. The taking of such action by Seller shall not preclude the seeking of additional damages that may have been caused by Buyer as a result of the above.

11. **SECURITY INTEREST.** By signing this Contract, Customer grants to Dealer a security interest in the trade-in vehicle and the vehicle being purchased, to secure customer's obligation under this Contract, and the other documents executed in connection herewith. In the event of a breach of the Contract by Customer, Dealer may exercise all rights of a secured party under the Uniform Commercial Code of Illinois with respect to the trade-in vehicle and the vehicle being purchased. Customer agrees to execute any and all document reasonably required by Dealer to perfect this security interest.

12. **ATTORNEY'S FEES.** In the event of any breach of contract or default by Purchaser that necessitates the filing of court action, Seller shall be entitled to reasonable attorney's fees and costs in addition to any other recovery by Seller against Purchaser.

13. **INSURANCE.** No public liability insurance issued with this transaction. Customer may choose the person through which any insurance is obtained and is not required to obtain Credit Life or Disability Insurance Coverage.

14. **VENUE.** The Customer agrees that the Circuit Court of DuPage County or the United Stated District Court, Northern District of Illinois shall be the exclusive and sole possible sites for any lawsuit between the parties arising out of or related to this Contract or the vehicle being purchased hereunder.

15. **LIMITATIONS.** No legal or administrative action may be commenced in the form of a claim, counter-claim, third party action or otherwise, by either party arising out of this Contract, or in connection with the transaction described herein, more than one year after the claim upon which such action is based arises, provided, however, that this provision shall not apply to any action to enforce any retail installment contract executed in connection herewith.

16. **NOTICE TO DEALER OF DEFECTS OR CLAIM.** No legal or administrative action may be commenced by th Customer against Dealer or any other party arising out of this contract, or in connection with the transaction described herein, in the form of a claim, counter-claim, third party action or otherwise, unless Customer shall give Dealer prompt written notice of the defect or claim upon which any such action will be based and afford Dealer reasonable opportunity, of not less than 21 days, to correct or satisfy any such defect or claim.

17. **SPECIAL BENEFITS PROGRAM.** The elective Special Benefits Program charge has been explained to Customer and Customer understands that the special benefits are in addition to the goods and services ordinarily provided in connection with the purchase of the vehicle described above.

18. **INDEMNITY.** Customer agrees to indemnify and hold Dealer harmless from any and all claims of liability and expense, including but not limited to injury to person or property, loss of profit and reasonable attorney's fees, arising as a result of or in connection with any breach of the Customer's warranties, representations and agreements contained in the Contract, including but not limited to, the representations stated below concerning the trade-in vehicle.

### TERMS, CONDITIONS, AND CUSTOMER WARRANTIES FOR TRADE-INS

19. **RE-APPRAISAL.** If the used motor vehicle which has been traded in as part of the consideration for the motor vehicle ordered hereunder is not to be delivered to Dealer until delivery to Purchaser of the new motor vehicle, the used motor vehicle shall be reappraised at that time and such reappraisal value shall determine the allowance made for such used motor vehicle. If such reappraised value is lower than the original allowance therefore shown on the front of this Order, Purchaser may, if dissatisfied therewith, cancel this Order prior to taking delivery.

20. **VEHICLE MODIFICATIONS AND EMISSIONS.** Customer warrants that he or she has not modified, and will not modify, the trade-in vehicle in a way which would violate any state, federal or local laws or regulations, including but not limited to vehicle emission laws, regulations promulgated by the Department of Transportation and the Environment Protection Agency, and safety regulations and that he or she does not know of any such modifications; Customer further warrants that the trade-in vehicle in compliance with the Illinois Vehicle Emission Inspection Law, Ill. Rev. Stat. Ch. 95 1/2, Par 13A-101 et seq. Customer also warrants that the trade-in does not have a cracked engine block and that the Customer has not replaced and does not know of a replacement of the engine of the trade-in with the engine of any other year, make or model of the vehicle.

21. **GOOD TITLE.** Except as otherwise expressly noted herein, Customer warrants that; (a) The trade-in vehicle is his or her property free and clear of all liens and encumbrances; (b) customer has lawful possession of the trade-in vehicle, with full authority to sell, transfer and deliver it to Dealer hereunder; and (c) No other person has any interest in the trade-in vehicle. Customer agrees to deliver the Certificate of Title to Dealer, complete with all necessary signatures, at the time of delivery of the trade-in vehicle to Dealer. If Customer learns that he or she has violated this warranty of good title, Customer shall immediately so notify Dealer in writing and pay Dealer, in cash, the amount of the trade-in allowance, plus any amount for which Dealer is liable to the owner of the trade-in vehicle.

22. **SALVAGE TITLE.** Customer represents and warrants that title to the motor vehicle trade-in hereunder is not, by way of illustration but not limitation, a S.V. or rebuilt Certificate of Title of a vehicle, or any other type of status or specific nomenclature of certification which might, with or without Customer's knowledge, in any way alter or diminish title, or in any way reduce the vehicle's value as determined by Dealer.

23. **FAILURE TO DELIVER TRADE-IN VEHICLE OR TITLE.** If Customer fails to deliver the trade-in vehicle, and/or good title thereto, on or before the time the purchased vehicle is delivered, the agreement between Customer and Dealer for the purchase of the purchased vehicle as set forth in the Contract remains in full force and effect, unless cancelled by Dealer, except that upon the selection of Dealer, there shall be immediately due and payable to Dealer from Customer the amount of the trade-in allowance, in cash.

24. **ODOMETER.** Purchaser warrants that the odometer on his/her trade-in motor vehicle has not been altered, set back disconnected or replaced while in Purchaser's possession. Purchaser further agrees to indemnity and hold Seller harmless for ANY liability resulting from any odometer inconsistencies the cause of which occurred prior to the delivery of said motor vehicle to Seller.

25. **YEAR OF TRADE-IN.** Purchaser also warrants and represents the year of the trade-in listed on the front of this order is the actual and correct year for the trade-in.

26. **CANCELLATION.** In the event the customer's purchase of the purchased vehicle is cancelled in accordance with the Contract prior to delivery of the trade-in vehicle to Dealer, the purchase of the trade-in vehicle by Dealer is also cancelled.

# EXHIBIT B

DEAL NO 74637

# ARBITRATION AGREEMENT

## NOTICE: THIS AGREEMENT REQUIRES THE PARTIES TO ARBITRATE DISPUTES AND WAIVES THE PARTIES' RIGHTS TO PROCEED IN COURT.

2006 CHRY 300　　　　　　　　　　　　　05/02/2007
2C3KA53G86H458101　　　　　　　　　　　Date

　　In this Arbitration Agreement, the term "you" refers to the buyer(s) or lessor(s), who sign below. The term "we" refers to Bill Kay Chrysler of Downers Grove. By signing this Arbitration Agreement, you and we agree to submit our disputes to arbitration. By agreeing to submit our disputes to arbitration, you and we give up some rights, including the right to go to court and the right to a jury trial.

　　This Arbitration Agreement shall apply to any dispute, issue, controversy or claim arising from any events which occurred prior to, on or subsequent to the execution of this Arbitration Agreement. A "dispute" includes any controversy or claim arising from or relating to the vehicle you have purchased or leased on the date shown above. The term "dispute" also includes, but is not limited to, claims relating to the negotiation of the purchase or lease of the vehicle, and any dispute relating to any vehicle service contract purchased or provided at the time the vehicle was purchased or leased, or thereafter. In addition, the term "dispute" includes any question regarding whether a matter is subject to arbitration under this Arbitration Agreement.

　　This Arbitration Agreement is incorporated into and made a part of any and all agreements or contracts executed on or about the date shown above or any related agreements or contracts entered into before, on or after the date above, and this Arbitration Agreement shall survive the expiration or voiding of any such other agreements or contracts. This Arbitration Agreement will apply, control over, and supercede any arbitration provision contained in any related agreements including, but not limited to, any retail installment contract or lease you sign.

　　In the event any provision or clause of this Arbitration Agreement shall be adjudicated invalid or unenforceable for any reason, such provision or clause shall be deemed to be ineffective solely to the extent of such invalidity or unenforceability, and such adjudication shall not effect the remainder of this Arbitration Agreement, any contract or instrument with which this Arbitration Agreement is incorporated and made a part of, which shall continue in full force and effect. If either party to this Arbitration Agreement files a law suit in contravention of this Arbitration Agreement and refuses to voluntarily withdraw such suit upon receiving notice by the other party of the obligation to arbitrate, then the party seeking to compel arbitration shall be entitled to reasonable attorneys' fees incurred in compelling arbitration.

　　An award by the arbitrator(s) shall be final and binding on all parties to the proceeding. Judgement on the award may be entered by either party in the highest local, state or federal court or before any administrative body. However, nothing in this Arbitration Agreement shall be deemed to give the arbitrator(s) any authority, power or right to alter, change, amend, modify, add to or subtract from the provisions of any other documents executed by the parties.

　　You and we agree that the transactions relating to the vehicle involve interstate commerce and that this Arbitration Agreement shall be subject to and governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. This arbitration process shall be governed by the rules of the American Arbitration Association.

**BY SIGNING BELOW YOU ACKNOWLEDGE THAT YOU HAVE READ THIS ARBITRATION AGREEMENT AND THAT YOU AGREE TO ITS TERMS AND CONDITIONS.**

_[signature]_　　　　　　　　　　　　　　Bill Kay Chrysler of Downers Grove
Buyer or Lessee
　　GEORGE GATLIN

BILL KAY'S CHRYSLER OF DOWNERS GROVE　　BY: _[signature]_
Seller

EXHIBIT B

# EXHIBIT C

# Bill Kay CHRYSLER

2100 Ogden Avenue * Downers Grove, Illinois 60515
630-963-8800

28007

```
        AMOUNT      PAID BY     COMMENT
        800.00      CASH        CASH
```

```
GEORGE GATLIN                          TOTAL RECEIVED:        $800.00
733 N WALLER ST
CHICAGO        IL    60644             DATE-TIME: 23MAY2007 20:04
                                         CASHIER: NKEONYE
74637                                   LOCATION:
                                     CASH DRAWER:
```

ACCOUNTING DISTRIBUTION

```
CO   JOURNAL   CO   ACCOUNT      AMOUNT    CONTROL              CONTROL2
1    50        1    10200        800.00
               1    11100       -800.00    74637
```



CASH RECEIPT
CUSTOMER COPY

# EXHIBIT D

**23-2**  **11Jul07 0900**  **CPD**
(Court Branch # or District #) / (Court Date/Time) / (Arresting Agency #)

MISDEMEANOR COMPLAINT  (This form replaces CCG-0655, CCMC-0222 & CCMC-0225)    (Rev. 12/7/00) CCCR 0655

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

The People of State of Illinois,
            Plaintiff

v.    NO. _____

**George Gatlin**
            Defendant

**Bill Kay Chrysler** _____ complainant, now appears before
(Complainant's Name Printed or Typed)

The Circuit Court of Cook County and states the following:

That: **George Gatlin** (defendant) of **733 N. Waller Chgo IL 60644** (address), has, on or about **04 Jun 08** (date) at the location of **5433 W. Chicago Ave** (place of offense)

committed the offense(s) of **Defraud Financial Institution**
in that he/she **did knowingly & intentionally submitted false documentation of employment status & financial status.**

in violation of **720** (Chapter) Illinois Compiled Statutes **5** (Act) **17-1-C-1** (Sub Section)

AOIC Code [ ][ ][ ][ ][ ][ ]

(Complainant's Signature)
**9851 S 78th Ave**
(Complainant's Address)    **708-233-9608**
**Hickory Hills IL**    (Complainant's Telephone)
**Anthony Caputo**
(Complainant's Name Printed or Typed)

STATE OF ILLINOIS } ss:
COOK COUNTY

The complainant, being first duly sworn on oath, deposes and says that he/she read the foregoing complaint by him/her subscribed and that the same is true.

(Complainant's Signature)

Subscribed and sworn to before me on this **4th** day of **June**, **2007**
**D. Brown / A. Muller**, **7071**
(Judge or Clerk)

I have examined the above complaint and the person presenting the same and have heard evidence thereon, and am satisfied that there is probable cause for filing same. Leave is given to file said complaint.

SUMMONS ISSUED, Judge _____ Judge's No. _____
or
WARRANT ISSUED, Bail set at: _____
or
BAIL SET AT: _____ Judge _____ Judge's No. _____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**