**BILL KAY CHRYSLER**
2100 OGDEN AVENUE
DOWNERS GROVE, IL
1-630-968-8800

**USED**



## PURCHASE CONTRACT/BILL OF SALE

PURCHASE CONTRACT/BILL OF SALE FOR USED VEHICLE

| DATE | SALESPERSON | | |
|---|---|---|---|
| 05/02/2007 | | | |

| YEAR | MAKE/MODEL | | BODY TYPE |
|---|---|---|---|
| 2006 | CHRY 300 | | |

| VIN NUMBER | COLOR/TRIM |
|---|---|
| 2C3KA53G86H458101 | GREY |

| STOCK NUMBER | MILEAGE |
|---|---|
| P7252 | 18830 |

The used vehicle sold under the Purchase Contract of the same date is sold "AS IS" with no express OR implied warranties or representations. The salesperson of the Dealer did not:
1. Refer to the condition of the vehicle by using phrases such as (or similar to) "cream of the crop", "cream puff", "a cherry", "like new", "in perfect condition", or "it's safe".
2. Represent that the vehicle is "accident free" or "has never been in an accident" or "is something that will provide worry-free performance" or the like.
3. Represent that the vehicle has been "safety checked", "inspected", "examined" or "treated" other than the matters set forth on the attached list.
4. Refer to the prior owner in any way.

| | | |
|---|---|---|
| CASH PRICE OF VEHICLE | $ | 22995.00 |
| CHRYSLER GAP&DLR | | N/A |
| OPTIONAL ERT FEE (EVR) | | 495.00 |
| DOCUMENTARY SERVICE FEE | | 25.00 |
| SPECIAL BENEFITS PROGRAM | | 58.48 |
| | | N/A |
| TOTAL | $ | 23573.48 |
| ILLINOIS SALES TAX  8.0000 | | 1846.28 |
| OTHER TAXES (if any) | | 173.09 |
| FEDERAL LUXURY EXCISE TAX (10%) | | N/A |
| CASH PRICE OF VEHICLE | | 25592.85 |
| LICENSE, TRANSFER TITLE DRIVE AWAY FEE | | 143.00 |
| SERVICE CONTRACT SOLD BY BILL KAY CHRYSLER | | 1500.00 |
| TOTAL PURCHASE PRICE | | 27235.85 |
| CASH DOWN PAYMENT | | 8500.00 |
| TRADE IN ALLOWANCE | | N/A |
| DUE BASED UPON NOTE IN ____ DAYS | | N/A |
| REBATES APPLIED | | N/A |
| | | N/A |
| TOTAL DOWN PAYMENT | | 8500.00 |
| UNPAID CASH BALANCE DUE | $ | 18735.85 |

### FINANCING TERMS

**DEALER ARRANGED FINANCING.** In the event of a time sale, DEALER SHALL NOT BE OBLIGATED TO SELL UNTIL AND UNLESS a finance source approves this order and agrees to purchase a retail installment contract between customer and Dealer based on this order. As part of obtaining financing, Customer agrees to provide Dealer with a true, correct and complete credit application and to cooperate fully in obtaining financing including providing of any supporting documentation. This agreement may be cancelled by Dealer if Dealer determines that it cannot obtain third party approval and may be cancelled by either party if no financing is obtained for Customer on the agreed terms within 15 business days of the date of this agreement. If the Contract is terminated as a result of the inability to obtain third party financing, Customer agrees to return the vehicle within 24 hours of notice from Dealer and Dealer agrees to return the Customer's trade and down payment, if applicable. Dealer may repossess the vehicle if Customer refuses to return it.

NOTICE: TO THE NEGOTIATED CASH SALE PRICE OF EACH VEHICLE, NO MORE THAN $53.52 MAY BE ADDED FOR DEALER COSTS AND OVERHEAD. THE ONLY OTHER ADDITIONAL CHARGES PERMITTED ARE DEALER ADDED OPTIONS, WARRANTY AND SERVICE CONTRACTS, INSURANCE AND THE ACTUAL COST OF LICENSE AND TITLE REGISTRATION AND TAXES.

**IMMEDIATE DELIVERY - SHORT TERM FINANCING.** I accept immediate delivery and possession of the subject vehicle. In exchange for such possession, I promise to pay Dealer the remainder of the purchase price in accordance with the SHORT TERM FINANCING agreement attached hereto and made a part of hereof. If I do not pay pursuant to the terms of the SHORT TERM FINANCING agreement, I understand that I will have breached this contract and will be liable to Dealer for damages as set out on the reverse side of this contract and in the SHORT TERM FINANCING agreement.

**NO DEALER FINANCING.** I am tendering full payment for this subject vehicle at the time of this transaction or will make full payment within _____ days. Once this agreement is signed by me and accepted by Dealer regardless of when I take actual possession of the vehicle, it is fully binding. I understand that if I do not fulfill my obligations under the contract or if my check does not clear, I will be liable to Dealer for damages arising from liability based on breach of warranty, contract, tort, strict liability or any other statutory or common law theory of liability.

---

| CUSTOMER NAME | DATE OF BIRTH |
|---|---|
| GEORGE GATLIN | 04/22/58 |

| STREET ADDRESS |
|---|
| 733 N WALLER ST |

| CITY, STATE, ZIP |
|---|
| CHICAGO, IL 60644 |

| BUSINESS ADDRESS |
|---|

| CITY, STATE, ZIP |
|---|

| RESIDENCE PHONE | BUSINESS PHONE |
|---|---|
| (773) 379-0218 | (773) 823-6703 |

| DRIVER'S LICENSE NUMBER |
|---|
| G345-3005-8115 |

| SOCIAL SECURITY NUMBER |
|---|

### TRADE-IN VEHICLE

| YEAR | MAKE/MODEL | COLOR |
|---|---|---|
| | | |

| VIN # | |
|---|---|
| VIN # | |

| ADDRESS | |
|---|---|

| BALANCE OWED TO # | $ |
|---|---|

| USED CAR ALLOWANCE | $ |
|---|---|
| (USED CAR ALLOWANCE DOES NOT ALWAYS REFLECT ACTUAL CASH VALUE) | |

| ESTIMATED BALANCE OWED ON CAR | |
|---|---|
| (SUBJECT TO VERIFICATION) | |

| NET ALLOWANCE ON USED CAR | |
|---|---|
| (TRANSFER TO LEFT COLUMN) | |

SIGNATURE OF CUSTOMER

I UNDERSTAND AND AGREE TO TRADE-IN THE VEHICLE DESCRIBED ABOVE AS USED UNDER THE TERMS SET FORTH ABOVE AND OF THE REVERSE SIDE. IF THE BALANCE DUE ON THE TRADE-IN VEHICLE THE CUSTOMER IS SELLING IS AN AMOUNT GREATER THAN SHOWN ABOVE, THE CUSTOMER AGREES TO PAY THE ADDITIONAL AMOUNT IN CASH UPON REQUEST. I certify that the above information about my trade-in is correct.

NOTICE: DEALER SPECIFICALLY MAKES NO REPRESENTATION AS TO ANY AIR BAG ON THIS VEHICLE. PLEASE REFER TO THE MANUFACTURER'S WARRANTIES AND SPECIFICATIONS.

THE VEHICLE REFERENCED IN THIS CONTRACT IS SOLD AS EQUIPPED AT TIME OF DELIVERY.

THIS CONTRACT DOES NOT PROVIDE ANY RIGHT TO RESCISSION OR A TRIAL PERIOD.

**EXHIBIT A**

### WARRANTY DISCLAIMERS AND OTHER INFORMATION

**VEHICLE SOLD "AS IS".** The dealer makes no express or implied warranties with respect to the used vehicle sold hereunder. The Customer has not made the dealer aware of any special or particular purpose for which he or she intends to use the vehicle and is not relying on the Dealer's skill or judgement to furnish a vehicle suitable for any such purpose. SPECIFICALLY, THE CUSTOMER IS NOT RELYING UPON ANY REPRESENTATIONS OF THE DEALER'S SALESPERSONS, THE VEHICLE'S CURRENT CONDITION OR HOW THE VEHICLE WILL PERFORM OR IF THE VEHICLE HAS BEEN SAFETY CHECKED OR INSPECTED. THE DEALER, TO THE FULLEST EXTENT PERMITTED BY LAW, EXPRESSLY DISCLAIMS AND EXCLUDES ANY AND ALL WARRANTIES, WHETHER EXPRESSED OR IMPLIED, WITH RESPECT TO THE USED VEHICLE SOLD HEREUNDER, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND STATES THAT THIS IS AN "AS IS" SALE. If the vehicle has been sold with a Warranty or Service Contract, the implied warranties or merchantability of fitness for a particular purpose are not disclaimed except as provided below.

**LIMITATION IN DURATION OF IMPLIED WARRANTIES.** To the extent that implied warranties cannot be disclaimed because this vehicle has been sold with a warranty or service contract, Dealer hereby limits the period of any implied warranties, including warranties of merchantability and/or fitness for a particular purpose to the duration of the service contract and/or warranty that is provided with the vehicle.

**FTC WINDOW STICKER.** THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THE CONTRACT. INFORMATION ON THE WINDOW FORM (BUYER'S GUIDE) OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT FOR SALE.

**VEHICLE EMISSIONS.** Dealer makes no representation or warranty that any vehicle sold hereunder has passed or will pass the inspection required by the Illinois Vehicle Emission Inspection Law, Ill. Rev. Stat. Ch. 95 1/2, par. 13A-101 et seq. Compliance is the responsibility of the Customer.

In the case of a service contract, coverage of this service contract is not provided by Chrysler Corporation, its parent, subsidiaries or its affiliates.

APPROVED AND ACCEPTED BY:
ACCEPTED BY BILL KAY CHRYSLER, INC.

---

THIS TRANSACTION IS NON-CANCELABLE AFTER THE SIGNING OF THIS AGREEMENT EXCEPT AS PROVIDED HEREIN. IF YOU FAIL TO COMPLY WITH YOUR OBLIGATION UNDER THIS CONTRACT, YOU WILL BE LIABLE FOR THE REASONABLE ATTORNEY'S FEE INCURRED BY DEALER IN THE ENFORCEMENT OF THE CONTRACT, AS WELL AS OTHER CHARGES (SEE NO. 8 ON REVERSE SIDE).

THIS CONTRACT IS NOT VALID UNLESS SIGNED & ACCEPTED BY BILL KAY CHRYSLER, INC.

**NO PUBLIC LIABILITY INSURANCE WITH THIS TRANSACTION.**

I ACKNOWLEDGE THAT DEALER AND ITS AGENTS AND REPRESENTATIVES HAVE MADE NO REPRESENTATIONS, AGREEMENTS OR PROMISES, CONCERNING THE CONTRACT, FINANCING OF THE VEHICLE BEING PURCHASED HEREUNDER, THAT DO NOT APPEAR IN WRITING. BY SIGNING BELOW DEALER CERTIFIES THAT ALL IDENTIFYING NUMBERS CONTAINED IN THIS BILL OF SALE AGREE WITH THOSE ON THE CERTIFICATE OF TITLE.

THIS CONTRACT IS SUBJECT TO CORRECTION OF ANY MATHEMATICAL ERROR BY SALES OR OFFICE PERSONNEL. I CERTIFY THAT I AM 18 YEARS OF AGE OR OLDER. I ACKNOWLEDGE THAT I HAVE READ THE TERMS OF THIS CONTRACT AND THAT I HAVE RECEIVED A COPY OF THIS CONTRACT. I HAVE READ THE MATTER IN THE BACK OF THIS CONTRACT AND AGREE TO IT AS PART OF THIS CONTRACT AND I HAVE SIGNED THE SAME AS IF IT WERE PRINTED ABOVE MY SIGNATURE. I ACKNOWLEDGE THAT THE CONTRACT CONTAINED NO BLANK SPACE AT THE TIME OF SIGNING.

YOUR SIGNATURE BELOW CERTIFIES THAT THE FUNDS USED FOR THIS TRANSACTION WERE ENTIRELY DERIVED FROM LEGAL SOURCES, AS REQUIRED BY FEDERAL LAW.

SIGNATURE OF CUSTOMER (S): _____

NO INCIDENTAL OR CONSEQUENTIAL DAMAGES. The Customer shall in no event be entitled to recover from Dealer any incidental or consequential damages in connection with this Contract including without limitation, damages resulting from injury to property, loss of use, loss of time, loss of profits or loss of income, and including, without limitation any such damages arising from liability based on breach of warranty, contract, tort, strict liability or any other statutory or common law theory of liability.

## ADDITIONAL TERMS AND CONDITIONS

1. **DEFINITIONS.** As used in this Order the terms (a) "Dealer" or "Dealership" shall mean Bill Kay Chrysler, Inc., who is the Dealer to whom this Order is addressed (b) "Purchaser" or "Customer" shall mean the party executing this Order on the face hereof and (c) "Manufacturer" shall mean the Corporation that manufactured the vehicle or chassis, it being understood by Purchaser the Dealer is in no respect the agent of Manufacturer.

2. **PRICE CHANGES.** Manufacturer has reserved the right to change the price to Dealer of new motor vehicles without notice. In the event the price to Dealer of new motor vehicles of the series and body type ordered hereunder is changed by Manufacturer prior to delivery of the new motor vehicle ordered hereunder by Purchaser, Dealer reserves the right to change the cash delivered price of such motor vehicle to Purchaser accordingly. If such cash delivered price is increased by Dealer, Purchaser may if dissatisfied therewith cancel this Order, prior to taking delivery or within seven days of notice of the price change, whichever is earlier.

3. **DESIGN CHANGES.** Manufacturer has reserved the right to change the design of any new motor vehicle, chassis, accessories or parts thereof previously purchased by or shipped to Dealer or being manufactured or sold in accordance with Dealer's orders. Correspondingly, in the event of any such change by Manufacturer, Dealer shall have no obligation to Purchaser to make the same or any similar change in any motor vehicle, chassis, accessories or parts thereof covered by this Order either before or subsequent to delivery thereof to Purchaser.

4. **DELIVERY DELAYS.** Dealer shall not be liable for failure to deliver or delay in delivering the motor vehicle covered by this Order where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer.

5. **TAXES.** The price of the car quoted herein does not include any tax or taxes imposed by any governmental authority prior to or at the time of delivery of such car unless expressly so stated. The Customer assumes and agrees to pay, unless prohibited by law, any taxes, except income taxes, imposed on or incidental to the transaction herein, regardless of the person having the primary tax liability.

6. **RIGHT TO INSPECT - FINAL ACCEPTANCE OF VEHICLE.** The Customer acknowledges that he or she will be given an opportunity to thoroughly inspect the vehicle sold hereunder prior to taking delivery and that by taking delivery the Customer agrees to accept such vehicle with any defect or non-conformity. Receipt of delivery of the vehicle sold hereunder constitutes the Customer's acknowledgement that said vehicle conforms to this Contract and constitutes the Customer's unqualified acceptance of the vehicle pursuant to Section 2-606 of the Uniform Commercial Code as enacted in Illinois.

7. **OTHER DOCUMENTS.** The Purchaser, before or after the time of delivery of the motor vehicle covered by this Order will execute such other terms of agreement of documents as may be required by the terms and conditions of payment indicated on the front of this Contract.

8. **DAMAGES FOR BREACH BY CUSTOMER.** In the event the Customer shall, except as permitted hereunder, cancel the Contract or refuse to take delivery of and pay for the vehicle sold herein, Dealer may, among other remedies, retain from Customer's down payment, or collect from Customer liquidated damages in an amount equal to $1000.00 or 20% of the purchase price of the vehicle, whichever is less. Where a used motor vehicle has been traded in as a part of the consideration for the motor vehicle ordered hereunder, Dealer may sell such used motor vehicle and reimburse itself out of the proceeds of such sale any expenses and for the sale as well as the liquidated damages set out above. Dealer may in the alternative, elect to sue the Customer for any actual damages it has incurred as a result of Customer's breach, including but not limited to, its lost profit under the Contract.

9. **RUSTPROOFING.** Purchaser acknowledges that he/she has reviewed the vehicle manufacturer's warranty with respect to corrosion or rust and the written policy statement of the vehicle manufacturer with respect to "After-market" rustproofing and appearance products. Some manufacturer's suggest that rustproofing may not be necessary.

10. **REPOSSESSION.** In addition to any other remedies that may be available, in the event the Purchaser's down payment checks do not clear the bank or in the event financing (if applicable) is not accepted by the financing source, and Purchaser refuses to return the automobile, or in the event of any default by Purchaser of any of Purchaser's obligations hereunder, Purchaser authorizes Seller to repossess the motor vehicle with or without legal process and by peaceable entry upon Purchaser's property. The taking of such action by Seller shall not preclude the seeking of additional damages that may have been caused by Buyer as a result of the above.

11. **SECURITY INTEREST.** By signing this Contract, Customer grants to Dealer a security interest in the trade-in vehicle and the vehicle being purchased, to secure customer's obligation under this Contract, and the other documents executed in connection herewith. In the event of a breach of the Contract by Customer, Dealer may exercise all rights or a secured party under the Uniform Commercial Code of Illinois with respect to the trade-in vehicle and the vehicle being purchased. Customer agrees to execute any and all document reasonably required by Dealer to perfect this security interest.

12. **ATTORNEY'S FEES.** In the event of any breach of contract or default by Purchaser that necessitates the filing of court action, Seller shall be entitled to reasonable attorney's fees and costs in addition to any other recovery by Seller against Purchaser.

13. **INSURANCE.** No public liability insurance issued with this transaction. Customer may choose the person through which any insurance is obtained and is not required to obtain Credit Life or Disability Insurance Coverage.

14. **VENUE.** The Customer agrees that the Circuit Court of DuPage County or the United Stated District Court, Northern District of Illinois shall be the exclusive and sole possible sites for any lawsuit between the parties arising out of or related to this Contract or the vehicle being purchased hereunder.

15. **LIMITATIONS.** No legal or administrative action may be commenced in the form of a claim, counter-claim, third party action or otherwise, by either party arising out of this Contract, or in connection with the transaction described herein, more than one year after the claim upon which such action is based arises, provided, however, that this provision shall not apply to any action to enforce any retail installment contract executed in connection herewith.

16. **NOTICE TO DEALER OF DEFECTS OR CLAIM.** No legal or administrative action may be commenced by th Customer against Dealer or any other party arising our ot this contract, or in connection with the transaction described herein, in the form of a claim, counter-claim, third party action or otherwise, unless Customer shall give Dealer prompt written notice of the defect or claim upon which any such action will be based and afford Dealer reasonable opportunity, of not less than 21 days, to correct or satisfy any such defect or claim.

17. **SPECIAL BENEFITS PROGRAM.** The elective Special Benefits Program charge has been explained to Customer and Customer understands that the special benefits are in addition to the goods and services ordinarily provided in connection with the purchase of the vehicle described above.

18. **INDEMNITY.** Customer agrees to indemnify and hold Dealer harmless from any and all claims of liability and expense, including but not limited to injury to person or property, loss of profit and reasonable attorney's fees, arising as a result of or in connection with any breach of the Customer's warranties, representations and agreements contained in the Contract, including but not limited to, the representations stated below concerning the trade-in vehicle.

## TERMS, CONDITIONS, AND CUSTOMER WARRANTIES FOR TRADE-INS

19. **RE-APPRAISAL.** If the used motor vehicle which has been traded in as part of the consideration for the motor vehicle ordered hereunder is not to be delivered to Dealer until delivery to Purchaser of the new motor vehicle, the used motor vehicle shall be reappraised at that time and such reappraisal value shall determine the allowance made for such used motor vehicle. If such reappraised value is lower than the original allowance therefore shown on the front of this Order, Purchaser may, if dissatisfied therewith, cancel this Order prior to taking delivery.

20. **VEHICLE MODIFICATIONS AND EMISSIONS.** Customer warrants that he or she has not modified, and will not modify, the trade-in vehicle in a way which would violate any state, federal or local laws or regulations, including but not limited to vehicle emission laws, regulations promulgated by the Department of Transportation and the Environment Protection Agency, and safety regulations and that he or she does not know or any such modifications. Customer further warrants that the trade-in vehicle in compliance with the Illinois Vehicle Emission Inspection Law, Ill. Rev. Stat. Ch. 95 1/2, Par 13A-101 et seq. Customer also warrants that the trade-in does not have a cracked engine block and that the Customer has not replaced and does not know of a replacement of the engine of the trade-in with the engine of any other year, make or model of the vehicle.

21. **GOOD TITLE.** Except as otherwise expressly noted herein, Customer warrants that; (a) The trade-in vehicle is his or her property free and clear of all liens and encumbrances; (b) customer has lawful possession of the trade-in vehicle, with full authority to sell, transfer and deliver it to Dealer hereunder; and (c) No other person has any interest in the trade-in vehicle. Customer agrees to deliver the Certificate of Title to Dealer, complete with all necessary signatures, at the time or delivery of the trade-in vehicle to Dealer. If Customer learns that he or she has violated this warranty of good title, Customer shall immediately so notify Dealer in writing and pay Dealer, in cash, the amount of the trade-in allowance, plus any amount for which Dealer is liable to the owner of the trade-in vehicle.

22. **SALVAGE TITLE.** Customer represents and warrants that title to the motor vehicle trade-in hereunder is not, by way of illustration but not limitation, a S.V. or rebuilt Certificate of Title of a vehicle, or any other type of status or specific nomenclature of certification which might, with or without Customer's knowledge, in any way alter or diminish title, or in any way reduce the vehicle's value as determined by Dealer.

23. **FAILURE TO DELIVER TRADE-IN VEHICLE OR TITLE.** If Customer fails to deliver the trade-in vehicle, and/or good title thereto, on or before the time the purchased vehicle is delivered, the agreement between Customer and Dealer for the purchase of the purchased vehicle as set forth in the Contract remains in full force and effect, unless cancelled by Dealer, except that upon the selection of Dealer, there shall be immediately due and payable to Dealer from Customer the amount of the trade-in allowance, in cash.

24. **ODOMETER.** Purchaser warrants that the odometer on his/her trade-in motor vehicle has not been altered, set back disconnected or replaced while in Purchaser's possession. Purchaser further agrees to indemnify and hold Seller harmless for ANY liability resulting from any odometer inconsistencies the cause of which occurred prior to the delivery of said motor vehicle to Seller.

25. **YEAR OF TRADE-IN.** Purchaser also warrants and represents the year of the trade-in listed on the front of this order is the actual and correct year for the trade-in.

26. **CANCELLATION.** In the event the customer's purchase of the purchased vehicle is cancelled in accordance with the Contract prior to delivery of the trade-in vehicle to Dealer, the purchase of the trade-in vehicle by Dealer is also cancelled.