IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| George Gatlin,<br>　　　　　Plaintiff,<br><br>v.<br><br>P.O. A. Criscione, Star #16195,<br>P.O. S. Mulkerrin, Star # 17071,<br>Anthony Caputo, individually, and<br>The City of Chicago, S&H Towing,<br>and Bill Kay Chrysler,<br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)　No. 07 C 7212<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**BILL KAY CHRYSLER'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION TO STAY AND COMPEL ARBITRATION**

Ogden Chrysler Plymouth, Inc. d/b/a and sued herein as Bill Kay Chrysler (hereinafter "Bill Kay"), by its attorney, Stuart D. Gordon of Gordon & Karr LLP, submits the following memorandum in support of its motion to stay and compel arbitration.

**I**

**STATEMENT OF FACTS**

Dave Schoon is the General Sales Manager of Bill Kay. As indicated in his attached affidavit ("Schoon Aff."), on May 2, 2007, plaintiff and Bill Kay entered into a contract whereby plaintiff intended to purchase a 2000 Chrysler 300 ("the vehicle") (Schoon Aff., ¶ 2) The contract (Schoon Aff., Ex. A) was contingent on Bill Kay's ability to secure a third-party willing to finance the transaction. (Schoon Aff., ¶ 3, Exs. A and B) Bill Kay received a commitment from Greater Suburban Auto Credit ("GSAC") to finance plaintiff's purchase, contingent upon GSAC's verification of information plaintiff provided in his credit application. (Schoon Aff., ¶ 4, Ex. C)

1

As indicated in the attached affidavit of Anthony Schneider, GSAC's Director ("Schneider Aff."), GSAC was unable to verify plaintiff's home address, employment and residence. For instance:

A.  Information provided by plaintiff had conflicting residence addresses. (Schneider Aff., ¶ 6; Exs. H and I)

B.  Information provided by plaintiff as to his employer's phone number was inaccurate. (Schneider Aff., ¶¶ 3 and 4)

C.  The address given by plaintiff as to his employer (a construction company) turned out to be an apartment building. (Schneider Aff., ¶ 5; Ex. G)

As a result of the foregoing, GSAC decided not to finance plaintiff's purchase of the vehicle. (Schneider Aff., ¶ 7)

Unable to find a third-party source willing to finance plaintiff's purchase of the vehicle, Bill Kay asked plaintiff to return it. (Schoon Aff., ¶ 5) When plaintiff refused to do so, Bill Kay hired Illinois Solutions Group to repossess the vehicle. (Schoon Aff., ¶ 8) At no time did Bill Kay authorize Illinois Solutions Group, S&H Towing, or Anthony Caputo, or any other entity or person, to execute a criminal complaint on behalf of Bill Kay. (Schoon Aff., ¶ 8)

Plaintiff has sued Bill Kay asserting pendent state claims for false arrest (Count V) and malicious prosecution (Count VII, alleging that his arrest during the repossession based upon defendant Caputo's statement that plaintiff had a weapon, and Caputo's signing of a criminal complaint alleging that plaintiff was guilty of defrauding a financial institution, violated his rights. Because plaintiff signed an Arbitration Agreement

2

wherein he agreed to resolve any and all disputes with Bill Kay through arbitration (Exhibit J), Bill Kay has filed a motion to stay and compel arbitration ("arbitration motion").

Plaintiff's response to the arbitration motion[1] seeks to avoid arbitration based upon the following arguments:

A. Bill Kay waived its right to seek arbitration when its "agent" signed a criminal complaint. (Response, pp. 3-5)

B. Plaintiff's civil rights lawsuit is not a dispute covered by the arbitration agreement. (Response, pp. 5-7)

C. Plaintiff's claims against Bill Kay are intertwined with his claims against all the other defendants, and thus he should not be compelled to arbitrate his claims against Bill Kay. (Response, pp. 7-8)

As shown below, plaintiff's arguments are without merit.

II

## BILL KAY DID NOT WAIVE ITS RIGHTS TO COMPEL ARBITRATION

As indicated in the attached affidavit of David Schoon, Bill Kay hired Illinois Solutions Group (and not S&H Towing or Anthony Caputo) to repossess the vehicle in plaintiff's possession. (Schoon Aff., ¶ 7) Bill Kay never authorized any person or entity to act as its agent in signing a criminal complaint against plaintiff. (Schneider, Aff., ¶ 8) Of course, if Bill Kay did not ask anyone to prosecute plaintiff, it can hardly be found to

---

[1] The response is "supported" with an affidavit signed by plaintiff's counsel, but no affidavit signed by plaintiff.

3

have engaged in "malicious prosecution".[2] *See, Gosh v. Roy*, 208 Ill.App.3d 30, 566 N.E.2d 873, 875 (5th Dist. 1991). Since Bill Kay never authorized anyone to initiate a criminal case against plaintiff, it cannot be said to have maliciously prosecuted him whatever form Caputo signed. (*See*, Response, Ex. D)[3]

Nevertheless, there are a number of reasons why, even if Bill Kay had authorized the signing of criminal complaints against plaintiff, or if Caputo had been Bill Kay's agent, that conduct and status would not operate as a waiver of Bill Kay's right to seek the arbitration of plaintiff's civil, common law claims.

First, it is well established that under federal law, "a waiver of arbitration is not lightly to be inferred". *Midwest Window Systems, Inc. v. Amcor Industries, Inc*, 630 F.2d 535, 536 (7th Cir. 1980).

Second, it is clear that under federal law, Bill Kay cannot be considered to have waived its right to compel arbitration. In *Design Benefit Plans, Inc. v Enright*, 940 F.Supp. 200 (N.D.Ill. 1996), the plaintiff ("DBP") filed a lawsuit against the defendant ("Enright"), which then filed an answer and a counterclaim. DBP, then filed a motion to stay and all proceedings and to compel the arbitration of Enright's counterclaim. Enright, like Gatlin, argued that DBP had waived its right to compel arbitration "when it filed suit". (940 F Supp at 201)

In rejecting Enright's waiver argument and compelling the arbitration of the issues raised in the counterclaim,[4] Judge Phillip Reinhard found that DBP's conduct did

---

[2] The complaint alleges that Chicago Police Officers, but not Bill Kay, arrested plaintiff (Complaint, ¶¶ 17 and 18)
[3] Curiously, the criminal complaint does not contain any case number or court information
[4] The action was originally filed in the Circuit Court of Winnebago County, but was removed to federal court on diversity grounds. However, Judge Reinhard did look to Illinois law in interpreting the enforceability of the arbitration agreement. (940 F.Supp at 204-206)

4

not, for the following reasons, support even a finding of a presumptive waiver or constitute a waiver of its right to compel arbitration:

1. DBP did not answer the counterclaim; instead it immediately moved to compel arbitration. (*Id.*)

2. DBP never acted inconsistently with its right to arbitrate the issues raised in Enright's counterclaim. (*Id.*)

3. The issues raised in the counterclaim were separate and distinct from those in the original complaint.[5] Thus, the matters which DBP sought to arbitrate "were not injected into the litigation" until the counterclaim was filed. (940 F.Supp. at 203)

4. The counterclaim significantly altered the nature of the litigation and operated to "rejuvenate" the right to demand arbitration. (940 F.Supp. at 203; *see also, Envirex, Inc v. K.H Schussler For Unwelttechnik GMBA*, 832 F.Supp 1293 (E.D.Wisc. 1993))

5. Even if DBP's filing of the original complaint created a presumption of waiver, the waiver did not bar the arbitration of the counterclaim, which was seen as an "unexpected event".

A similar result was reached in *Commercial Union Ins. C v. Gilbane Bldg Co.*, 992 F.2d 386, 390 (1st Cir. 1993), where there was a finding of no waiver when a party sought to compel arbitration of a counterclaim which raised issues which were separate and distinct from those raised in the initial complaint.

Here, of course, the issues raised in the criminal case filed against plaintiff are separate and distinct form the issues raised in plaintiff's civil complaint. Moreover, the

---

[5] The complaint alleged a breach of restrictive covenants in an Agent Agreement, while the counterclaim alleged a withholding of commissions.

5

filing of plaintiff's civil complaint was obviously an unforeseen development, particularly since Bill Kay never had any knowledge of the criminal cases. (Schneider Aff., ¶ 8)

Third, Illinois case law also leads to the conclusion that Bill Kay did not waive its right to compel arbitration.

Illinois courts recognize that arbitration is the favored method of resolving disputes, *Cencula v. Keller*, 152 Ill.App.3d 754, 504 N.E.2d 997 (2nd Dist. 1987), *Burnett v Safeco Insurance Co.*, 227 Ill.App.3d 167, 169, 590 N.E.2d 1032 (5th Dist. 1992), and Illinois courts disfavor a finding that a party has waived its right to arbitrate. *Kostakos v KSN Joint Venture No. 1*, 142 Ill.App.3d 533, 536, 491 N.E.2d 1322 (1st Dist. 1986). A waiver occurs only with an act which is inconsistent with an arbitration clause. (*Id.*)

Even the participation in a lawsuit may not constitute a waiver. For instance, a court has found no waiver where a party just responded to a lawsuit with a request for a temporary restraining order, *Jacobs v. C+M Video, Inc.*, 248 Ill.App.3d 654, 618 N.E.2d 1267 (5th Dist. 1993), and even where a party filed a counterclaim and answer. *D.E. Wright Electric v. Henry Russ Construction*, 183 Ill.App.3d 46, 538 N.E.2d 1182, 1187-1188 (5th Dist. 1989). Here, of course, Bill Kay never participated in any criminal case filed against plaintiff.

In *Liberty Chevrolet, Inc. v. Rainey*, 339 Ill.App.3d 791 N.E.2d 625 (2nd Dist. 2003) the Illinois Appellate Court, Second District, addressed many of the same issues that are present here. Liberty Chevrolet sold a vehicle to Rainey. At the time of the transaction, Rainey signed a retail installment contract and an Arbitration Agreement. After financing could not be obtained, Rainey refused to return the vehicle. Liberty

Chevrolet then filed a replevin action against Rainey. Rainey responded with a multi-count counterclaim. Liberty Chevrolet then moved to non-suit the replevin action (which motion was allowed) and to compel Rainey to arbitrate her counterclaims. Rainey argued, as does Gatlin here, that by filing the initial action, the right to compel arbitration was waived. (791 N.E.2d at 536) The trial court disagreed and ordered Rainey to submit her claims to arbitration. (*Id.*)

On appeal, the Appellate Court rejected the waiver argument, and in affirming the granting of the motion to stay and compel arbitration, stated:

> "[t]here is simply no bright-line rule that, merely by filing a complaint, a plaintiff waives the right to demand the arbitration of the issues raised by the complaint. A *fortiori*, there is no rule that filing a complaint waives the plaintiff's right to demand arbitration of new issues that the defendant has raised in a counterclaim. (791 N.E.2d at 630)

The Appellate Court further held:

> "[w]e cannot conclude that the intention to seek judicial action in a summary proceeding in order to obtain limited relief is inconsistent with the intention to seek arbitration of a variety of complex claims that plaintiff could not reasonably foresee when it filed its replevin complaint".
> (791 N.E.2d at 630)

Here, of course, Bill Kay never instituted any legal action against Gatlin, and there is absolutely no evidence that it participated in any litigation (civil or criminal) involving plaintiff.

Fourth, it is important to note that Bill Kay could not initiate a criminal case in an arbitration forum. Bill Kay has no lawful authority to initiate a criminal prosecution (rights vested with the various State's Attorneys and the Illinois Attorney General) and civil arbitrators have no authority to enforce Illinois criminal laws. And, of course, Bill

Kay could not have instituted a criminal case in arbitration. *Myers v. Rosenberg*, 1986 U.S.Dist. LEXIS 28488 (N.D.Ill. 1986). Since the issues raised in the criminal cases against plaintiff could only be addressed in an Illinois criminal court, in a prosecution led by governmental officials, even if Bill Kay had filed a criminal complaint against plaintiff, it cannot be said to have waived its right to compel the arbitration of plaintiff's pendent civil state claims.

## IV

### THE CLAIMS RAISED IN PLAINTIFF'S PENDENT STATE CLAIM AGAINST BILL KAY ARE DISPUTES COVERED BY THE ARBITRAITON AGREEMENT

In his Response (at pp. 5-7), plaintiff argues that his "civil rights suit" is not a dispute covered by the Arbitration Agreement. There a number of problems with that argument.

First, plaintiff's argument is based upon a partial (and ultimately misleading) quote from the Arbitration Agreement. In his response (at p. 8), plaintiff suggests that the Arbitration Agreement only applies to "any controversy of claim arising from or relating to the vehicle". In fact, the Arbitration Agreement has a significantly more expansive definition of disputes. It provides:

> "This Arbitration Agreement shall apply to any dispute, issue, controversy or claim arising from any events which occurred prior to, on or subsequent to the execution of this Arbitration Agreement. A "dispute" includes any controversy or claim arising from or relating to the vehicle you have purchased or leased on the date shown above. The term "dispute" also includes, but is not limited to, claims relating to the negotiations of the purchase or lease of the vehicle, and any dispute relating to any vehicle service contract purchased or provided at the time the vehicle was purchased or leased, or thereafter. In addition,

8

> the term "dispute" includes any question regarding whether a matter is subject to arbitration under this Arbitration Agreement." (Ex. J; emphasis added)

Clearly, disputes arising from a repossession of the vehicle and plaintiff's execution of a false credit application during the course of the transaction are "disputes" covered under the Arbitration Agreement. In fact, both the purchase contract (Schneider Aff., Ex. A) and a separate Rider (Schneider Aff., Ex. B)[6] gave Bill Kay the right to repossess the vehicle after plaintiff ignored requests to return the vehicle.

Second, the Arbitration Agreement in this case is considered to have a "generic" arbitration provision because it requires the arbitration of "any" dispute. Generally, a generic arbitration provision requires the arbitration of "disputes arising out of" or "related to" the underlying agreement. *Nagel v. Nadelhoffer, Nagel, Kuhn, et al*, 244 Ill.App.3d 930, 613 N.E.2d 331, 33 (2nd Dist. 1993); *Johnson v. Baumgardt*, 216 Ill.App.3d, 558, 576 N.E.2d 515, 520 (2nd Dist. 1991).

Third, plaintiff's malicious prosecution claim is unquestionably related to his efforts to purchase the vehicle. In order to sustain a claim of malicious prosecution, plaintiff must establish (1) the commencement or continuous of a criminal or civil proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff;[7] (3) the absence of probable cause; (4) the presence of malice; and (5) resulting damages. *Joiner v. Benton Community Bank*, 82 Ill.2d 40, 45, 411 N.E.2d 229 (1978). Of course, the probable cause issue (relating to the charge of defrauding a financial

---

[6] Contrary to plaintiff's suggestion that Bill Kay's acceptance of a down payment on the vehicle meant that it had not acted in a timely manner in repossessing the vehicle, nothing in the purchase contract required cancellation or repossession in a fixed period of time. Moreover, the Rider contemplates a return of the down payment once Bill Kay regains possession of the vehicle.

[7] The criminal case was "dismissed", apparently without a trial or determination of guilt or innocence. (Complaint, ¶ 11) If so, plaintiff cannot maintain a malicious prosecution case. *Gosh v. Roy*, 208 Ill.App.3d 30, 566 N.E.2d 873, 875 (5th Dist. 1991).

institution) involves the information provided by plaintiff in the credit application he submitted in connection with his attempt to purchase a vehicle from Bill Kay.

Fourth, even if the arbitrability of plaintiff's claims against Bill Kay was in doubt, any such doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 26-26 (1983).

Fifth, plaintiff has selected the wrong forum within which to seek a determination as to the arbitrability of his claim. Illinois law is clear in holding that questions of arbitrability are to be decided by an arbitrator. *See, Donaldson, Lufkin & Jennette Futures, Inc. v. Barr*, 124 Ill.2d 435, 530 N.E.2d 439, 443 (1988).

A recent decision of the Alabama Supreme Court addressed many of the same arguments made by plaintiff here. In *Dan Wachlel Ford, Lincoln Mercury, Inc., v. Modas*, 891 So.2d 287 (2004), a customer refused to return a vehicle to a dealer after financing could not be obtained. The dealer had the vehicle repossessed and instituted criminal charges against the customer. The charges were subsequently "nol-prossed", and the customer sued the dealer for conversion, trespass, malicious prosecution and abuse of process.

The dealer then moved to compel arbitration and the customer resisted, arguing, among other things, that the language in the arbitration agreement was not sufficiently broad in scope to encompass her claims. The Alabama Supreme Court rejected that argument finding that the conversion and trespass claims arose directly out of plaintiff's transaction with the dealer, and the malicious prosecution and abuse of process claims arose from the dealer's actions after the customer refused to return the vehicle. The

court, quoting from the arbitration agreement, found that all the claims are "claims resulting from or arising out of, or relating to, or concerning the transaction entered into". (891 So.2d at 293) *See also, Edwards Motors, Inc. v. Hudgins*, 957 So.2d 444 (2006).

Here, plaintiff signed an Arbitration Agreement wherein he agreed to submit to arbitration "any dispute" arising from his attempt to purchase a vehicle from Bill Kay. His pendent state claims certainly arose from that purchase attempt, as well as plaintiff's refusal to return the vehicle to Bill Kay after financing could not be obtained. And if there were any question as to the arbitrability of plaintiff's claims, the Arbitration Agreement provided that:

> "... the term 'dispute' includes any question regarding whether a matter is subject to arbitration under the Arbitration Agreement". (Ex. J)

Unquestionably, plaintiff's claims, and his arbitrability argument, must be submitted to an arbitrator.

## IV

### THE FACT THAT PLAINTIFF HAS NON-ARBITRABLE CLAIMS AGAINST OTHER DEFENDANTS DOES NOT BAR THE ENFORCEMENT OF THE ARBITRATION AGREEMENT

Plaintiff's final argument is that arbitration should not be compelled because his civil rights claims against defendants who are not parties to the Arbitration Agreement are "intertwined" with his claims against Bill Kay. He suggests that he would be prejudiced by having to prosecute his claims against others without the availability of discovery from Bill Kay. He cites no authority for his argument. (Response, pp. 7-8)[8]

---

[8] Plaintiff does argue that it would be improper to compel the arbitration "of the entire civil rights suit". (Response, p. 8) Of course, no one has sought that relief, and there is no "civil rights" claim against Bill Kay.

11

Plaintiff's argument overlooks the fact that federal law requires the enforcement of the Arbitration Agreement under those circumstances. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 19-20 (1983), the Supreme Court held that the Federal Arbitration Act "requires piecemeal resolution" and mandates the enforcement of an arbitration agreement notwithstanding the presence of other persons in the litigation who are not parties to the arbitration agreement. *See also, Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238 (1985); *Board of Managers v. IKO Chicago, supra, Galt v. Libbey-Owens-Ford Glass Co.*, 376 F.2d 711 (7th Cir. 1967)

Illinois law is similar. As the Illinois Supreme Court held in *Board of Managers of the Courtyards v. IKO Chicago*, 183 Ill.2d 66, 74, 697 N.E.2d 727 (1998), once a trial court has determined that a valid arbitration agreement exists, the court *must* compel arbitration, even when the principal litigation involves parties that are not signatories to the arbitration agreement. The fact that one party to a lawsuit is not a signatory to an arbitration agreement does not prevent the enforcement of the agreement as to the parties who did sign the agreement. 183 Ill.2d 66, 74 (1998). *See also, Bass v. SMG, Inc.* 328 Ill.App.3d 492, 765 N.E.2d 1079, 1092 (1st Dist. 2002).

Clearly the fact that plaintiff has other claims against other defendants cannot be used by plaintiff to prevent the arbitration of his claims against Bill Kay.

Plaintiff's attempt to avoid arbitration by arguing that he will be prejudiced by a lack of discovery against Bill Kay is, for a number of reasons, at best, a red-herring, and, at worst, disingenuous. First, Bill Kay's employees are not alleged to have participated in the deprivation of plaintiff's rights. Instead, plaintiff alleges that Bill Kay's "agent", Anthony Caputo, who will remain as a defendant even if arbitration is compelled, was the

cause of the deprivation of his rights. As a defendant in the case, Mr. Caputo will be available for discovery. Second, even if arbitration is compelled, plaintiff can subpoena Bill Kay documents and employees (for their depositions). Quite simply, plaintiff will not be prejudiced in any way if Bill Kay's motion to compel arbitration is granted.

V

**CONCLUSION**

For all the foregoing reasons, Ogden Chrysler Plymouth, Inc., d/b/a and sued herein as Bill Kay Chrysler, moves this Court for the entry of an order staying these proceedings as against it, and compelling plaintiff to submit his claims against Bill Kay Chrysler to arbitration.

>                    Ogden Chrysler Plymouth, Inc , d/b/a Bill
>                    Kay Chrysler,
>                         Defendant,
>
>
>                    By:____s/ Stuart D. Gordon
>                         One of its Attorneys

Stuart D. Gordon
Gordon & Karr LLP
150 North Wacker Drive
Suite 1650
Chicago, Illinois 60606
(312) 377-4450

13