

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE GATLIN,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| vs.      ) | |
| ) | Judge Joan H. Lefkow |
| P.O. A. CRISCIONE, STAR #16195,      ) | |
| P.O. S. MULKERRIN, STAR #17071, and      ) | No. 1:07-cv-7212 |
| ANTHONY CAPUTO, INDIVIDUALLY,      ) | |
| and THE CITY OF CHICAGO,      ) | |
| ILLINOIS SOLUTION GROUP, AND      ) | |
| BILL KAY CHRYSLER,      ) | |
| ) | |
| Defendants.      ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff George Gatlin filed a seven count complaint in this case. He alleges the following: (1) false arrest under 42 U.S.C. § 1983 against Chicago Police Officer defendants Criscione and Mulkerrin; (2) false arrest under 42 U.S.C. § 1983 against defendant Anthony Caputo; (3) excessive force under 42 U.S.C. § 1983 against defendants Criscione and Mulkerrin; (4) failure to provide medical care under 42 U.S.C. § 1983 against defendants Criscione and Mulkerrin; (5) false arrest under Illinois law against defendants Criscione, Mulkerrin, Caputo, Illinois Solution Group ("ISG"), and Bill Kay Chrysler ("Bill Kay"); (6) an Illinois law claim of willful and wanton conduct for failure to provide medical care against defendants Criscione, Mulkerrin, and the City of Chicago; and (7) malicious prosecution under Illinois law against defendants Caputo, ISG, and Bill Kay.

Before the court is the motion of Ogden Chrysler Plymouth, Inc., the corporate name of Bill Kay, to stay and compel arbitration of the claims against it pursuant to an arbitration

1

agreement between Gatlin and Bill Kay. For the reasons set forth below, the motion [#12] will be granted; however, the arbitration will be stayed until Gatlin's nonarbitrable claims have been resovled by the court.[1]

## I. Background

On May 2, 2007, Gatlin signed an agreement to purchase a used vehicle from Bill Kay ("the purchase agreement").[2] The purchase agreement provided that, while Gatlin was permitted to take the vehicle home that day, completion of the sale was contingent on Bill Kay's securing third party financing for the sale. Gatlin was required to cooperate in Bill Kay's efforts to secure financing, including filling out an accurate credit application as well as providing any necessary documentation. The purchase agreement also stated that if Bill Kay was unable to secure financing, Gatlin would be required to return the vehicle within 24 hours. Should Gatlin fail to do so, he authorized Bill Kay to repossess the vehicle, "with or without legal process."

Greater Suburban Acceptance Corporation ("GSAC") subsequently agreed to provide financing for Gatlin if it was able to confirm the information provided in his credit application. When GSAC was unable to confirm Gatlin's stated residence, employer, or income, it determined that it would not fund Gatlin's purchase. Bill Kay then requested that Gatlin return the vehicle, and when he failed to do so, Bill Kay hired ISG, a repossession company, to secure its return. Anthony Caputo was ISG's employee.

At some time before 3:00 on the afternoon of June 4, 2007, Caputo falsely informed officers Criscione and Mulkerrin that Gatlin was in possession of a weapon while driving on

---

[1] The court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.
[2] The court has taken the facts concerning the purchase agreement and related events, which are not materially disputed, from the Complaint and from Bill Kay's Reply in Support of its Motion. The facts concerning Caputo and the defendant officers are derived from the complaint and are disputed by the defendants but will be presumed true for the purpose of this motion. *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 928 (N.D. Ill. 2005)

2

Chicago Avenue near Pine Avenue in Chicago. Caputo arranged with the officers that they be present "when Caputo caused Plaintiff's vehicle to be stopped." When stopped, the officers searched Gatlin and his vehicle without lawful cause, arrested him without probable cause, and used excessive force against him. Also on June 4, Caputo on behalf of Bill Kay filed a police report alleging that Gatlin had submitted false information in his credit application in violation of Illinois law. Gatlin was criminally charged with defrauding a financial institution. On July 11, 2007, that charge was terminated in Gatlin's favor.

As relevant to the pending motion, Gatlin alleges arrest without probable cause in violation of the Fourth Amendment against Caputo individually on the basis that he willfully acted in concert with the officers in causing the unlawful arrest (Count II), as well as Illinois common law false arrest and malicious prosecution. He alleges that ISG and Bill Kay are liable for Caputo's state law torts based on the doctrine of *respondeat superior* (Count VII). Gatlin seeks compensatory and punitive damages against all the defendants.

Bill Kay maintains that Gatlin's claims of false arrest and malicious prosecution fall within the scope of an arbitration agreement signed by the parties in conjunction with the vehicle purchase agreement. That arbitration agreement provides, in relevant part, that it

> [s]hall apply to any dispute, issue, controversy or claim arising from any events which occurred prior to, on or subsequent to the execution of this Arbitration Agreement. A 'dispute' includes any controversy or claim arising from or relating to the vehicle you have purchased or leased on the date shown above. The term "dispute" also includes, but is not limited to, claims relating to the negotiation of the purchase or lease of the vehicle, and any dispute relating to any vehicle service contract purchased or provided at the time the vehicle was purchased or leased, or thereafter. In addition, the term 'dispute' includes any question regarding whether a matter is subject to arbitration under this Arbitration Agreement.

3

## II.     Legal Standard

The central purpose of the Federal Arbitration Act ("FAA") is to "ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobouno v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) (citations omitted).[3] "[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *CK Witco Corp. v. Paper Allied Indus., Chem. & Energy Workers Int'l Union*, 272 F.3d 419, 421-22 (7th Cir. 2001) (internal citations and quotations omitted). "To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich American Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006) (citations omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Mastrobouno*, 514 U.S. at 62 n.8 (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)). To further this policy in favor of arbitration, Section 3 of the FAA provides, in relevant part:

---

[3] Professor Margaret Moses argues forcefully, however, that judges have misinterpreted the FAA, granting it far greater breadth than Congress contemplated when it passed the law:

> ". . . [The Federal Arbitration Act ]--which has been construed to preempt state law, eliminate the requirement of consent to arbitration, permit arbitration of statutory rights, and remove the jury trial right from citizens without their knowledge or consent--is a statute that would not likely have commanded a single vote in the 1925 Congress."

Margaret L. Moses, *Statutory Misconstruction: How the Supreme Court Created a Federal Arbitration Law Never Enacted by Congress*, 34 FLA. ST. U. L. REV. 99 (2006).

4

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit or proceeding is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.[4]

"[The opponent of arbitration] bears the burden of establishing that the arbitration clause is unenforceable." *Stewart v. Molded Plastic's Research of Ill., Inc.*, 2001 WL 1607464, at *1 (N.D. Ill. Dec. 17, 2001) (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987) ("The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.")).

### III.   DISCUSSION

#### A.   Bill Kay Did Not Waive its Right to Arbitration

Gatlin first contends that because Caputo, acting on behalf of Bill Kay, initiated criminal proceedings against Gatlin, Bill Kay waived its right to arbitration. Choosing to submit issues which are arbitrable under a contract to a court for decision is a presumptive waiver of the right to arbitrate. *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995); *Kennedy v. Commercial Carriers, Inc.*, 630 N.E.2d 1059, 1062, 258 Ill. App. 3d 939, 943, 196 Ill. Dec. 894, 897 (Ill. App. Ct. 1st Dist. 1994). This is an unusual fact pattern. At least, neither party has cited any case authority specifically addressing the issue whether initiation of a criminal case in court to resolve a contractual dispute amounts to submitting arbitrable issues to a court for decision. Here, as the facts are presented, Bill Kay through its agent was not seeking

---

[4] Bill Kay argues that Illinois law also supports his motion, but the plaintiff responds only within the context of the FAA.

5

resolution of a dispute contemplated by the arbitration clause; it was attempting to effect its contractual right to take possession of the vehicle. Certainly, Bill Kay would not have had a justiciable claim at that point. It follows that Bill Kay has not waived its right to arbitration.

**B.     The Arbitrability of Gatlin's Claims against Bill Kay is an Issue to be Determined by the Arbitrator**

Gatlin next contends that these claims do not fall within the scope of the arbitration agreement because false arrest and malicious prosecution claims are too attenuated to have been reasonably considered by the plaintiff at the time he signed the arbitration agreement. One of Bill Kay's points in support of its motion, however, is that the parties agreed to submit the question of arbitrability itself to an arbitrator. As quoted above, the arbitration agreement provides that "'dispute' includes any question regarding whether a matter is subject to arbitration under this Arbitration Agreement."

Under both federal and Illinois law, "courts have recognized that parties are free to agree to submit the question of arbitrability itself to arbitration." *Bahuriak* v. *Bill Kay Chrysler Plymouth, Inc.*, 786 N.E.2d 1045, 1050, 337 Ill. App. 3d 714, 719, 272 Ill. Dec. 211 (2003) (citing *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 943-45, 115 S. Ct. 1920, 1923-25, 131 L. Ed. 2d 985, 992-94 (1995)); *Int'l Bhd. of Elec. Workers, Local 21* v. *Ill. Bell Tel. Co.*, 491 F.3d 685, 687 (7th Cir. 2007) (Issues of arbitrability are to be decided by the court unless the parties have clearly provide otherwise). Gatlin has not responded to this argument in his response brief. The arbitration agreement at issue clearly stipulates that questions of arbitrability will be submitted to arbitration. The court must therefore submit the question of arbitrability to the arbitrator.

6

## C.  Arbitration will be Stayed Until the Conclusion of this Case

Gatlin's final contention is that his claims against those defendants who were not signatories of the arbitration agreement are intertwined with the claims against Bill Kay and it would therefore be prejudicial to pursue these claims separately. His argument overlooks the fact that "the Federal Arbitration Act '*requires* piecemeal resolution when necessary to give effect to an arbitration agreement' and mandates enforcement of an arbitration agreement 'notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.'" *Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 697 N.E.2d 727, 732, 183 Ill. 2d 66, 75, 231 Ill. Dec. 942, 947 (1998) (citing *Moses H. Cone Memorial Hospital*, 460 U.S. at 20)). Immediate submission of Gatlin's claims against Bill Kay, however, would undermine the court's jurisdiction over Gatlin's nonarbitrable claims against the other defendants in this case. Because Bill Kay's liability is premised on *respondeat superior*, it will depend on the liability of Caputo and Illinois Solutions Group and on findings of fact regarding their actions. The arbitrator could not determine Bill Kay's liability without deciding whether Caputo and ISG are liable, and if it decides those issues before the court could do so, its decision could potentially have a *res judicata* effect on the claims against those parties in this case. When a similar situation arose in *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 644 (7th Cir. 1981), the Seventh Circuit said that the district court did not have discretion to force the parties to litigate otherwise arbitrable claims in order to preserve its jurisdiction over nonarbitrable claims, but noted that it *did* have discretion to stay the arbitration of those claims until the nonarbitrable claims had been decided by the court. Because that course of action would preserve the court's jurisdiction over Gatlin's nonarbitrable claims and would also promote efficiency, arbitration of Gatlin's claims against Bill Kay will be stayed until the conclusion of this case. If the arbitrator determines that those

claims are not arbitrable, they will return to the court, and their resolution will be likely to have been simplified by the proceedings in the interim.

IV.     **Conclusion and Order**

For the foregoing reasons, Bill Kay's motion to stay and to compel arbitration [#12] is granted; however, the arbitration is stayed until Gatlin's nonarbitrable claims have been resolved by the court.

Dated: July 10, 2008				Enter: _____
						Joan Humphrey Lefkow
						United States District Judge

8